Good morning. Good morning, Tariq Adlai for Mr. Adams. This court and the Supreme Court have repeatedly explained it, and I'll quote, when illegitimate grounds like race are at issue, a prosecutor simply has to state his reasons as best he can and stand or fall on the plausibility of those reasons. Here, the reason is implausible. In fact, some of the reasons he outright rejected. Let me just ask you a question, and if that's a challenge, let's assume, arguendo, that there are two reasons given for excluding a juror. One of them is suspicious, possibly pretextual, and the other one is absolutely solid and no problem. What happens then? So the giving of a false explanation is itself evidence of pretext. False. That's not a helpful word to me in this context. Do you mean, to answer Judge Smith's question, do you mean pretextual? That is correct. Okay, all right. By false, I mean not pretextual. Okay. Again, my question is, let's assume for a minute that you have two reasons given for the exclusion of a particular juror. One of them is at least arguably pretextual, but the other one is absolutely solid. What happens? Can you still exclude the juror based upon the legitimate, the valid, non-pretextual reason? Your Honor, at that point, what we're talking about is, why did the prosecutor give a pretextual reason if there really is a solid reason? Because at that point... Take my hypothetical. Don't mix it up here. Okay. If you have one good reason and one possibly pretextual reason, under the case law, what happens? Isn't that okay, then? The Batson challenge fails? Your Honor, actually, in this circuit, that question is still open. The California courts have recently, a recent case, Douglas, I think within the last few weeks, has affirmed that mixed motive from the Title VII doesn't apply because we're dealing with something particularly sensitive here, which is actually the integrity of the court system in the judiciary. Right. And when we talk about that, because I spent some time this week thinking about that, too, about two reasons. And the whole scheme, as I read this case law, the idea is that it's really hard to get a pretext, which is why we say, right now, on your feet, what's the reason? Right? Yes, Your Honor. That's the idea. Don't go back to your office and think about it. I want to know right now. That's what the court's supposed to do. And by the way, it strikes me that the court was really trying to do that here. I agree, Your Honor. So I wonder if there's two reasons, if we ought to be looking at the first reason that comes out of the prosecutor's mouth, rather than the ones that the prosecutor can think up upon reflection. I don't know that that hypothetical helps here, but I think it is an open question, and it seems to me that we need to look for the most spontaneous answer. Your Honor, I'd say the only juror that the prosecutor had two reasons for, both of those, I think, scream out it's pretext. I would like to make one other mention to the Court. In the abstract, no, Your Honor. But in this case, that wasn't the reason. Doesn't that answer Judge Smith's question? I don't think so, because we're looking at the prosecutor's actual reason. And her actual reason in this case wasn't that striking everyone with a family member with a negative law enforcement contact was a quixotic adventure in this case. A third of the panel had negative contacts. In this community, did any of them have close relatives in prison? What this prosecutor – I'm kind of looking for a yes or no there. Okay. If you could repeat – I'm sorry? Did any of the others who had law enforcement contact have close relatives in prison? Yes. Yes. In fact, the prosecutor accepted five different panelists with personal or family arrests. And I just – to qualify your question, Judge Hawkins, there wasn't someone who – Ms. Hamilton's father wasn't currently in prison. All we know is that back in 1994, almost 13 years ago, he had been in prison. We don't know what crime it was for. We don't know how long it was for. We don't know anything about the sentence. It could have been an overnight detention. And all of those uninformed details, the prosecutor didn't ask about, which is also an evidence of pretext. And perhaps he was operating on an assumption that he's black, he did something bad, it was a long prison sentence. She could have asked. But, counsel, in this case, we're talking about – this is an ad par appeal, right? That is correct. Okay. So here we're looking at whether the state court's decision – in this case, the court of appeals – was based on an unreasonable determination of the evidence presented at the state court. Yes. How do you meet that burden? I mean, these are not bad people. The trial judge did the best job could be done, presumably. The court of appeals, sincere people that went through it. What is it in the record that meets the standard of AEDPA to overturn this conviction, these convictions, based on a Batson challenge? That is correct. And I think there are aspects of AEDPA that are satisfied for both the arrest, for the tattoo, and for Belton. But let me just stick with Ms. Hamilton and the arrest aspect. This – in this case, the court of appeals' comparative analysis was fundamentally flawed, because they disregarded every other juror with law enforcement contacts because those people didn't have tattoos. And first off, that's contrary to the Millerell, which explains comparative analysis is not based on assuming jurors are product of cookie-cutter sets. But it's also an unreasonable interpretation of the prosecutor's own litmus test. Her purported rationale, when asked about her rationale, the trial judge said, are you going to strike everyone with negative law enforcement contacts? And her comment was, quote, I believe I am, period. What if she didn't ultimately? I mean, that's part of the problem, is that this rolls out over a period of time, and now with hindsight, we can see that she did not. But what did the trial judge know at the time, at the time that the challenge was made? We still had several. She – what did – I'm sorry. Well, it's just difficult. The judge has to make the call at the time. Yes. And now with hindsight, we know that there were several jurors who were seated with, as you said, contacts to the – to law enforcement. Right. But the judge didn't know that at the time, right? That is correct. So what's the judge supposed to do at that point? Is your – your point really is that the last recent decision has a flawed comparative analysis. It's – absolutely. So what – are they supposed to judge that with hindsight, knowing, as we do now, that the – that that rationale wasn't applied consistently? Well, I think one of the things that's important is – so, yes, for the court of perspective, they – they knew how this played out. From the trial judge's perspective, one of the things that I found problematic was that he – he – he rejected every one of the reasons. He ultimately said that he was going to find it for reasons other than racial bias. And I find you, personally, you credible. And he didn't – instead of focusing on the prosecutor's reasons – and that's why I started with that quote – he rejected the reasons but went to the prosecutor as a person. Well, it is a credibility determination. And he – and he makes the determination that, basically, as I read the record, he says, this is – this is a silly reason. This tattoo is – this is a silly reason. And I'm the only one here, practically, who doesn't have a tattoo. And he kind of says that. But at the end of the day, he says, I think, subjectively, prosecutor, you believe that this tattoo indicates some kind of disrespect for authority or something like that. So what do we do with his – basically, it is a credibility determination. I'm not – I'm not sure he says that, because he says it's a silly reason. And all he says is, I find you credible. I'm going to find you credible, not your reason. Meaning this really is your reason you're not doing this as a pretext. Shouldn't I read it that way? And if not, why not? I – well, I don't think so. I think he is – he disregards all – he even says, at the end of the prosecutor's – I don't think your explanation makes that much sense. And objectively, it's unreasonable. But have we ever said that? We're trying to get at whether the reason is racial bias. That's what we're trying to get at. Actually, Your Honor, racially motivated, because I think that's another problem. Is it's – as you note, I think we do – we are dealing with people who aren't – they're not overt racists. But I think especially the prosecutor with Mr. Belton is acting on racial stereotypes. And perhaps with Ms. Hamilton as well. Because I – But counsel, with respect, you ended up in this case with a number of African-American jurors. You ended up with some people that had law enforcement experiences. It turns out there was somebody that had a tattoo under a collar that wasn't seen. But whatever. But the reality is, at the end of the day, in an AEDPA appeal, the trial judge has to determine whether the reason given by the prosecution is legitimate. Ultimately, it's like any other credibility determination, is it not? I mean, the judge looks at the totality of the circumstances, considers perhaps the reputation of the prosecutor for past experience. I don't know for sure. But then – that he made a determination that there was credibility. Then you got the court of appeals that went through this and found the same way. You've got a very steep climb here, do you not, when you have these two, in effect, credibility determinations – one on the trial level, and then whether you have an unreasonable application of the facts at the court of appeal level. Unreasonable application of the facts, or contrary to the existing law. But what in the existing law do you believe was violated by what happened here? Well, one I already mentioned was contrary to Millerell, by trying to do a cookie-cutter analysis and refusing to analyze. Because juror one's son was arrested only two years ago. And the prosecutor said, I'm looking at recent arrests. Recent. And then she admitted that Hamilton's father's arrest is not – she used the word not a short time ago. So she's – she is just making up reasons. And I don't think they're – I think they're pretextual. And I think the record shows that. Right. It's very inconsistent, to be sure, and it's troubling. And then I'm troubled by this credibility determination, what I keep calling a credibility determination. And it sounds like your argument is that the prosecutor – what the judge is failing to see and what the court of appeals is failing to see is that the judge has made the call, which is these reasons don't make sense. These are silly reasons. And that's – whether you subjectively believe them or not, what we're getting at here is implied racial bias. The prosecutor may not even recognize in her own self. Is that right? I think that's an aspect of it. I think that's an aspect of what's going on. Then we get back, do we not, to the question that I started with, which is if you have a legitimate basis that nobody really questions, and you set that alongside of what my colleague has aptly referred to as a silly reason, do you not still give the trial judge a basis for making this determination? Whether one solid reason, one silly reason. If the judge thinks, okay, they've got a solid reason, I'm going to affirm that this was not pretextual. Does that work or does it not work? Your Honor, it would help me if I had some factual context, because this is a factual case. Well, the solid reason is the hard one. So – and that's the, you know, contact with law enforcement. Is your argument there that it wasn't consistently – what is your argument there? My argument, for EDPA purposes, this Court can do a de novo review because there was a bad – a bad comparative analysis. There was also – and I think the reliance on the final jury is – was not acceptable, because in this case it wasn't a situation where the prosecutor had accepted a panel with black jurors. After this Batchen hearing, she knew that she had four defense lawyers scrutinizing her every move. And if she made another – and she had a trial judge who'd said, your reasons, I don't believe them. She's not going to – if she's going to make another challenge to a racial minority, she's going to think long and hard about it. But that's all speculation. And I understand your reason for saying that, but there's nothing in the record to back that up, is there? The record that I just – so it's not to me. Is there anything in the record that says there are four defense lawyers waiting to pounce on everything she said? Well, we read the – we read the original – the original hearing, and there are two of them who were very aggressive in stating the prima facie case. I understand, but I'm – what I'm saying is, you know, this is speculation that you're offering. The trial judge, on the other hand, had to deal with the actual situation, perhaps one really solid one with the law enforcement connection, the tattoos, maybe not so much. So we are dealing with the question of, what do we do with a judge who has one solid reason and one, in quotes, a silly reason, in quotes. But she said her reason was recent arrests. She said that was her reason, and that was the only way she was going to actually get at one-third – a third of the panel that had negative law enforcement contacts. So for the solid reason, what we're calling the solid reason, your argument is it was not consistently applied. The comparative jurisdiction analysis doesn't hold up. It doesn't hold up in many ways. I mean, the court of appeal ignored the record. She didn't question Hamilton. There's so many indicia of pretext. And I hate to say I'm running out of time. You're almost out of time. Do you want to save any of your time for rebuttal? I'd wanted to save more than I've got. Say whatever you want. Whatever you want. I just want to answer the panel's questions. You've answered my question. Thank you. We'll give you a little bit of extra time, but not much. So think hard about what you want to say. Okay, let's hear from the government. Good morning, Your Honors. Deputy Attorney General Jennifer Jadavitz, co-respondent. Let me ask the flip side of the question Judge Smith asked. If we consider the visible tattoo to be more than just silly, but pretextual, do we ignore it in looking at the second reason? It's possible. In Rice v. Collins, there was somewhat of a similar situation with respect to a prosecutor giving multiple reasons for excusing a juror. And I believe it was, the argument was that the court gave too much weight to the gender, possible gender reason for excusing. And the court stated in Rice that they could look to the other neutral reasons that were given to determine that the prosecutor was not being pretextual in the excusal of the juror. And I would like to remind the court respectfully that the reasons given, whether the court finds those silly or perhaps trivial, namely the tattoo reason, that's the step two process. And to the extent that those reasons on their face are race neutral, we're done at that point, unless there's something inherently discriminatory in there, in which case they are not. What makes it suspect is the prevalence of tattoos. Correct. Which is why the court... Including the deputy, the second chair, and the prosecution of this case, right? I think that what the trial court did when it was looking at that reason offered by the prosecutor is that, yes, tattoos are prevalent in society. But the reasonable inference is, yes, the court didn't like that reason, and it would have not chosen that reason, perhaps. As Judge Christian pointed out, the trial court says he even felt awkward for not having a tattoo. But that's the step two. Now you go to step three, and you have the trial court doing exactly what it's supposed to do pursuant to case law. And that is looking at the genuineness of the motive for the prosecutor's reasons for excusing Hamilton in this case. But that's why it matters a lot to me. That's why I'm calling it silly. And he says, I believe that you subjectively believe this. It makes no sense to me. I believe you subjectively believe this. So set aside the law enforcement prior contact with law enforcement. But do we just look at the credibility determination, and we're supposed to be satisfied with that if the prosecutor is given a reason that really has no appropriate value if you're trying to look to what she said she was trying to look to, which is somebody who is demonstrating a disrespect or a nonconformity? I think at step three, you have to look at what the trial court did in analyzing the prosecutor's reasons. And as the Supreme Court has repeatedly said, the trial court is in the best position to look beyond the facial reason. And that's the genuineness of the motive and looking at the demeanor and the tone of the prosecutor, the way she's handled her case. And that's exactly what the trial court said. Yes, but you're not answering the question that he's really raising. The deeper issue here is what the Supreme Court is cautioned about, right? Which is the racial bias that all of us have and don't even know we've got it. We don't even know we've got it. So it seems to me this case really tees up that issue. She really believes the prosecutor is doing, sorry, the trial judge is doing an eyeball assessment right there. I believe, you believe this subjectively, you believe that because somebody's got a small, very unobtrusive tattoo of her child's astrological sign, you think that demonstrates something that makes no sense to me. And at what point does the trial court have to say, you know what? You're acting on implicit bias. You don't even see it yourself. Isn't that what the Supreme Court's saying that Batson's all about? I think what, but still what's at issue here is the trial court has to look at the totality of the circumstances. And again, still looking at the demeanor, the tone of how the prosecutor is handling the case. So while that may be true, you have to look at the totality of circumstances and not just the reason that's proffered. Okay. So walk me through that. What am I missing then in the totality of the circumstances about this concerning challenge? Well, what we can't see on the record, the cold record, is just the atmosphere that's in the courtroom there. The trial court is, as the Supreme Court has repeatedly said, is in the best position to view these live, I don't know, tones, demeanors, how the prosecutor's acting, maybe how she's explaining, how she just, you know, what's in her heart and in her mind, as the her, you know, what her tone is when she's explaining. She just doesn't believe that anyone with a visible tattoo is going to be respectful of society. And you're not going to get her tone and the sound of her voice. But that just goes to the credibility and her subjective. And I've given you that. Sure. I think this judge made really a good faith effort to do, and this is tough stuff. Sure. I believe you subjectively believe this reason and this reason makes no sense to me. He's made clear on the record the reason makes no sense. What do we do with that? I think that you look beyond that and you go, and I sound like, I'm sorry, repeating myself, but you, you take that for what it is. And as you've pointed out, the trial court essentially is finding that to be silly or  And that step, and that's, that's the step two process where Batson says, or Perkett perhaps says that it doesn't have to be plausible or persuasive at that point. A tattoo of an American flag, visible, that shows disrespect for society. I don't know the context of the tattoos, if she would have an issue with that. It sounds like she, she might, because she said even No, no, that's, it wasn't might. She said, you have a visible tattoo, you're out. Correct. So I was in the Marine Corps during Vietnam, and a lot of my buddies had tattoos that were in her arms. And those people were not disrespectful of society. I can tell you. Understood, Your Honor. And just as she's explained that even if she had police officers that were in the veneer panel that had visible tattoos, she was not going to be picking them for her jury. But that is her belief that she, that's her non-racially motive, facial, non-discriminatory belief that visible tattoos, she's just not buying it. The totality of the circumstances that we need to consider, I just want you to circle back, if you would, to Judge Hawkins's question, because now I wonder about the totality of the circumstances, including what I'm going to describe just on my scorecard as a legitimate reason, is prior contact with law enforcement. But it's a reason that is applied here quite inconsistently. Does that give us another chit that we should be weighing when deciding whether this, what we've really got here is a sincerely held belief that really is indicative of racial bias, a racially motivated challenge? With respect to the reason for excusing Hamilton because her father was incarcerated, I don't think it's inconsistent, because the fact of the matter is, is that her father was incarcerated, as the district court pointed out in, excuse me, in analyzing this issue. In addition, in combining the two reasons that- You just said that he's still incarcerated? I don't think we know that. No, the district court was saying that her father was actually incarcerated at the time. Yeah, but not recently, and the prosecutor really responds that this is a recent episode, and there are other jurors seated who have much more recent contact. I'm sorry, the difference I'm trying to make is that her father had been incarcerated. We don't know when that ended. We know that he passed away in 2004. We don't know if he died while incarcerated or not, but the point being is that he was actually incarcerated. The three jurors that remained on the panel, their contacts, family contacts, were arrests. We don't know if they led to convictions or incarcerations, and that's a distinction that the district court pointed out in its R&R in determining overall in combination with the two reasons that the prosecutor was not being purposefully discriminatory and excluded, and I think that distinction shows that we're not having an inconsistent application here. There's a strong difference between someone being incarcerated versus just being arrested. Is the distinction you're making one that the prosecutor ever pointed out? It did not. This is one that the district court pointed out. That's the only place I saw it. Exactly. I, you know, what troubles me about this is that if we get past in the step three, the judges weighing the totality of the circumstances, in this case, what if you had a misogynistic judge? He didn't believe anything that a woman said. Then what do we do with it? But sincerely doesn't believe. Sincerely, right. Right. I mean, how do you get beyond that? At some point, don't we have to trust, unless the record makes it absolutely clear that this is a lie, we have to trust the balancing, the weighing that the trial judge does. And in this case, while there were certainly inconsistencies, the reality was there were some number of African Americans remained. There were a number of people with tattoos, some not visible, that were involved. It was not consistent, but it's like everything else in our jurisprudence. It's not perfect. So we're really dealing with the situation of where do we draw the line here? Now, what troubles me is the fact that we have what, certainly by the case law, is a legitimate reason for excluding people from juries, which is prior law enforcement experience because of the fear that they will be against what law enforcement has done. Whether it's true or not, I don't know. But our case law says that's OK. You got that, then you got the, in quotes, silly reason, in quotes. Is your best case, I think you said it was Rice, which dealt with a slightly different content, is that your best case that when you got one solid reason based on case law and the judge says that's OK, we're done with our analysis? Is that correct? I believe Rice gives us some guidance. That's the case that I could find that was similar to the circumstances that the court is contemplating, what to do when you have multiple reasons and one of the reasons may or may not be questionable. Again, at this point, the court is taking the effort to separate those out. However, on this record, what the trial court did, the court of appeal did, and the district court did, because what the prosecutor did, we took those together. And together, it makes sense of what ultimately happened in this court. And the presumption here, is it not, that the presumption is that the petitioner must show at some level that the trial judge made an error and that the court of appeals unreasonably applied the facts, right? Correct, your honor. And as Batson says, and as other case law following it says, the ultimate burden is always with the opponent of the objection. And in this particular case, on this record, it remains respondent's position that he simply failed to meet that burden. So unless the court has any further questions. My colleague. No, thank you very much. Thank you. So counsel, you almost used your time up. But since you're a very nice fellow and we've submitted three cases, we're going to give you a minute and a half to respond, okay? I very much appreciate that. So let me start with the AEDPA standard. Once we get that the court of appeal was contrary to or an unreasonable application, this court's review is de novo. But with respect, how can you expect us not in the courtroom? We can't see this prosecutor. We can't consider anything. We have a dry record. How could we do a credibility determination afar, if you will, based on a record, a de novo review? How could we do that? Your honor, this court does it all the time in direct. Why do we have to do that? Why don't we accept that this was her subjective, legitimate belief? It just doesn't make any sense. And then that's indicative of racial bias. Well, the court could do that. But I think, you know... If you're asking us to make a different credibility determination, you're going to have to start talking fast. Because that's really tough for us to do on appeal. No, seriously, that's a much higher... I understand. But one of the things that's significant is that the court, all the courts ignored very significant evidence in the record, which included that the prosecutor gave an admittedly false reason for striking Juror Armstrong. The trial judge called her on it. Juror Armstrong was the pastor. And she said, well, he had a history, you know, he had a family. And in fact, this was, if you look at the prosecutor's reason, it was about recent arrests. His brother, 40 years ago. The trial judge called her on it, and she didn't back down. She acknowledged. But I do want to answer your very first question, Judge Smith. Okay. Fabricated reasons, Snyder. Snyder says that that's a big deal. When they give a fabricated reason or a pretextual reason, that casts a pall on all the reasons. And that's 552 U.S. at 478 and 484-85. And 484-85? Yes. Okay. And I think it's important that the prosecutor never asked jurors 1 and 2. So the Respondents' Council mentioned that there were three jurors on the panel. In fact, there were four jurors that actually sat on the panel with negative law enforcement. And the prosecutor didn't ask any questions about the law enforcement contacts for jurors 1 or 12. Any questions at all. She was perfectly fine and comfortable with them. And with jurors 6. We appreciate your enthusiastic representation. I'm sure your client does as well. Any other questions by my colleague? No, thank you. Thanks to both counsel for your argument. The case just argued is submitted.
judges: Hawkins, M. Smith, Christen